WILSON, administrator, *et al. v.* PARR *et al.*

1. Whether a court of the United States having jurisdiction in bankruptcy has or has not authority, under the bankrupt law, to adjudge that a partnership which has been dissolved by the death of one of the partners, and whose assets are in the hands of a surviving partner, is a bankrupt, can not be collaterally raised in a court of this State, when such an adjudication has in fact been made, but that adjudication will be duly respected by the courts of this State.
2. In such a case it is not erroneous for a superior court, which had, within four months prior to the adjudication in bankruptcy, appointed a receiver to take charge of and administer the assets of such partnership, to grant an application that the receiver deliver those assets to the trustee in bankruptcy.
3. Such court, however, may and should first charge the assets, so to be delivered, with the payment of the costs and expenses incurred, in bringing the same into the State court, before requiring delivery to be made to the trustee.

Submitted May 1, — Decided June 7, 1902.

Removal to bankrupt court. Before Judge Russell. Clarke superior court. October 17, 1901.

*Strickland & Green,* for plaintiffs in error.
*S. C. Upson* and *Sol. Flatau,* contra.

Little, J.    By an order duly granted by Judge William T. Newman, presiding in the United States district court for the northern district of Georgia, in the matter of Parr & Wilson, bankrupts, leave was granted to the Van Camp Packing Company, Gilpin, Langdon & Co., and the Empire Liquor Company to proceed in the State court in the name and for the use of the trustee in bankruptcy, by a proper petition, to have the said State court grant an order directing its receiver, West, to turn over to the trustee in bankruptcy all the assets, property, money, and effects belonging to the estate of Parr & Wilson, bankrupts.    In accordance with said leave given, the parties referred to filed a petition in the superior court of Clarke county, setting out, in brief, the following as a statement of facts: Petitioners are creditors of Parr & Wilson, who have been legally and duly adjudicated bankrupts within the purview of the act of Congress relating to bankruptcy; have properly proved their claims in the bankruptcy court; and their claims have been allowed by said court.    At the first meeting of creditors, H. S. West was duly appointed trustee of the estate of Parr & Wilson, bankrupts, gave bond, and accepted said office of trustee. Since his appointment and qualification, West, trustee, has reported to the referee in bankruptcy that the funds belonging to the estate of Parr & Wilson are in the hands of West, receiver, and that the receiver refuses to turn over to him said funds.    After West had so reported, petitioners filed in the district court of the United States a petition setting forth the facts reported.    On a hearing of said petition the receiver and the moving creditors in the State court proceeding appeared and were made parties, and after argument his honor Judge Newman passed the order before recited. Thereupon the petitioners prayed that a rule nisi issue, requiring West as receiver and the plaintiffs in the State court to show cause why such receiver should not be directed to turn over to the trustee in bankruptcy the assets, property, money, and effects belonging to the estate of Parr & Wilson, bankrupts.    When this petition was presented a rule nisi was issued; and for cause the respondents alleged that theretofore, in the State court, they had filed a bill against Parr as surviving partner, to force him to pay the debts and settle up the partnership, and West was appointed receiver under that petition and took charge of the assets belonging to Parr & Wilson; that after the death of Wilson, Parr contin-

ued business under the name of Parr & Wilson, and contracted a number of debts which were not paid. After West was appointed receiver, Parr, desiring to prefer certain of his creditors, had them file a proceeding against him and against the firm of Parr & Wilson, and have them declared bankrupts, without notice to the respondents, and the firm of Parr & Wilson were adjudicated bankrupts. This adjudication, while it was against the firm, was fraudulent, and, so far as concerns the plaintiffs, void, for the reason that they were the only creditors of Parr & Wilson, all the others being creditors of Parr alone. Petitioners in the bankruptcy proceeding were small creditors of F. L. Parr, and their debts were contracted after the death of Wilson, and they were not interested in any way in the assets of Parr & Wilson. The State court, having seized the assets of that firm for the purpose of settling its debts, should retain the case until the real creditors of Parr & Wilson are paid and the partnership has settled with the administrator of Wilson, and the remaining sum should then be turned over to the trustee in bankruptcy. There was no question concerning bankruptcy in the original petition filed by them in the State court, but it contained questions to be settled by the State court alone. There appears in the record a copy of the original petition under which the receiver was appointed, which contains more in detail a statement of the facts set out in the answer of the respondents. The case made by the petition and answers was heard by Judge Russell, of the State court, and an order was passed by him to the following effect: that there were questions involved in this case which must ultimately be determined by a court of bankruptcy, and it was therefore to the interests of all concerned that the entire case be tried in the same court; that all the papers in the case be transferred to the bankrupt court, and the judge of that court take jurisdiction of all the questions made; that West, receiver, pay all the costs of the case in the State court, and pay to himself $250 commissions, services and expenses as receiver to date, and pay to counsel for the receiver $250 for their services in filing the petition and bringing the fund into court, and for also representing the receiver; and that he pay over the remaining money in hand and turn over any money carried by the receivership to West, trustee. The respondents to the petition excepted to this ruling and order, on the ground that the court erred in hold-

ing that, under the pleadings and record as made, there was any bankrupt question to settle, and that the court also erred in transferring the case from the State court to the bankrupt court, and in rendering the judgment recited. The petitioners who prayed for the order of transfer filed a cross-bill of exceptions, complaining that the court erred in directing West as receiver to pay the costs and the expenses of the receivership proceeding in the State court, and that the trial judge also erred in directing the receiver, West, to pay himself commissions, etc., and counsel fees out of the fund in his hands, it being alleged that the State court was without jurisdiction to order such payment.

1. It is claimed by the answer of some of the defendants to the petition filed by the creditors of the bankrupts that the adjudication in bankruptcy was fraudulent and void in so far as those respondents were concerned, for reasons set forth by them. It is enough for us to say, in reply to this contention, that when an adjudication in bankruptcy has in fact been had by the bankruptcy court, such an adjudication will be respected by the State court, and the latter court will not, after a regular adjudication has been had, enter into an inquiry as to whether such adjudication was fraudulent or void. Mr. Black, in the first volume of his work on Judgments, § 248, citing the case of Chapman *v.* Brewer, 114 U. S. 158 (which upon examination seems to support his text), declares: "An adjudication in bankruptcy, having been made by a court having jurisdiction of the subject-matter, upon the voluntary appearance of the bankrupt, and being correct in form, is conclusive of the fact decreed, and can not be attacked collaterally in a suit brought by the assignee against a person claiming an adverse interest in the property of the bankrupt." Mr. Freeman, in his work on Judgments, second volume, § 337, declares that discharges in bankruptcy and other orders and decrees of courts of bankruptcy can not be collaterally impeached by proving them to be irregular; for which proposition he cites a number of cases found in note 1 on page 612. See also *Brady* v. *Brady*, 71 *Ga.* 71. Many other authorities could readily be cited to prove that where an adjudication in bankruptcy has been made by a court of competent jurisdiction, such adjudication will be respected by the State court, and the question whether it was erroneously made or not will not be entertained by such court, but the whole matter will be relegated to the proper

bankruptcy court in which such adjudication was had, and there the parties complaining may and can have all objections to the regularity of the proceedings of such court considered and passed on.

2. It is further claimed that the court erred in directing its receiver to turn over to the trustee in bankruptcy the property and assets of Parr & Wilson. We can not agree to this view. Assuming, as we must, under the pleadings in this case, that the firm of Parr & Wilson was regularly adjudicated bankrupt by a court of competent jurisdiction, it follows that the State court could not properly administer and divide the estate of the bankrupt among creditors under the pleadings as they stand in the State court, and it must be apparent that only a court of bankruptcy can do so. Having all the proper parties before it, it has jurisdiction to settle priorities and determine facts, and in doing so full protection can be given the rights of all creditors. It was ruled by Judge Adams, in the United States district court of the southern district of New York, under the present bankruptcy act, that where the property of a corporation is levied on by execution, and thereafter a temporary receiver is appointed in a voluntary proceeding for the dissolution of the corporation on the ground of its insolvency, a receiver in bankruptcy subsequently appointed is entitled to the custody of the property; but that in view of the comity which exists between the Federal and State courts, and the fact that the temporary receiver is an officer of the State court and acting under its immediate direction, an application for an order specifically directing the sheriff and temporary receiver to turn over the property to the receiver in bankruptcy should be made to the State court. Matter of the Lengert Wagon Co., 6 Am. B. R. 535. The Supreme Court of Rhode Island, in the case of Mauran v. Crown Carpet Lining Co., 6 Am. B. R. 734, ruled that "The word 'judgment' in section 67f of the bankrupt act, is sufficiently broad to apply to the judgment of a State court in appointing a receiver of an insolvent corporation, obtained within three months of an adjudication as an involuntary bankrupt," and that " On application to the State court by the trustee in bankruptcy of an insolvent corporation which has been adjudged an involuntary bankrupt, the funds in the hands of the receiver of said corporation, appointed by the State court twelve days prior to the filing of the petition in bankruptcy, in what was practically an insolvency proceeding, must be turned over to him for ad-

ministration in the bankruptcy proceedings." See also Re Lesser (U. S. C. C. A.), 5 Am. B. R. 320; *Seligman* v. *Ferst,* 57 *Ga.* 561; *Seligman* v. *Saussy,* 60 *Ga.* 20. It is therefore ruled, both on principle and authority, that the judge committed no error, under the facts in the record in this case, in directing the receiver appointed by the State court to turn over the assets in his hands, as receiver, to the trustee in bankruptcy.

3. The defendants in error by their cross-bill of exceptions complain that the judge erred in granting so much of the order as directed West, receiver, to pay the costs of the receivership proceedings in the State court, and in likewise ordering him to pay himself $250 for commissions, services, and expenses as receiver, and the sum of $250 to the attorneys as fees for bringing the fund into court, and for representing the receiver; all of said sums having been ordered to be paid out of the fund held by the receiver of the State court, and having arisen from the sale of the property of the defendants under orders taken in the original equitable proceeding in the State court, under which the receiver was appointed. It seems to us that it was eminently proper for the costs and enumerated expenses of the receivership in the State court to have been ordered paid from the fund before the same was turned over to the trustee in bankruptcy. The services of the receiver and his attorneys inured to the benefit of the creditors of the bankrupt. They were rendered under the order of the State court, and the fund in that court was the result of the services of the receiver and his attorneys, acting under the orders of the court, and ought to be paid. As this fund in any court would be properly chargeable with such costs and expenses, and as the services of both the receiver and the attorneys in the original equitable petition were concluded by the order of transfer, there existed no reason why, before the transfer was made, the expenses of raising the fund transferred should not be paid. In the case of Mauran *v.* Crown Carpet Lining Co., supra, it was ruled that, "Under the general rule that a receiver holding property under the order of the court, for the benefit of the party entitled to it, should be paid from the funds as a part of the expense of the proceeding, the fund or estate in his hands, with reference to a party entitled to it, is the surplus over the charges allowed to the receiver; and as the trustee in bankruptcy is vested only 'with the title of the bankrupt as of the date

he was adjudicated a bankrupt,' the court, on further consideration, held that the receiver's fees and expenses incurred before the adjudication should be allowed to him, and the balance of the funds turned over to the trustee." In the case of *Seligman* v. *Ferst*, supra, this court directed that "funds in the hands of the receiver appointed by the State court be surrendered to said trustees [in bankruptcy], except so much thereof as is legally necessary to defray the costs and expenses of collecting the fund and securing it until the order of surrender shall be granted." No point is made in the briefs of counsel that such costs and expenses could not properly be claimed after the date of the adjudication in bankruptcy, and there is nothing in the record before us which establishes the fact that any of the sums allowed to be paid out of the fund were for costs and expenses subsequently to the date of the adjudication; but the objection seems to be predicated on the allowance of any costs and expenses from the fund in the hands of the receiver. There is no reason why the State court should have sent its officers to the bankruptcy court to secure pay for their services, to which they were justly entitled, and from which the fund to be distributed in the court of bankruptcy arose. It is our opinion that the court committed no error, under the evidence set out in the record, in directing these costs, fees, and expenses to be paid out of the fund before the same was turned over to the trustee in bankruptcy.

*Judgment on the main and cross bills of exceptions affirmed. All the Justices concurring, except Lewis, J., absent.*