**In re MOORE et al.**
No. 15096.

District Court, N. D. Georgia.
July 22, 1930.

C. Mortimer Mason, of Atlanta, Ga., for trustee.

Wm. F. Buchanan and J. Robert Smith, both of Atlanta, Ga., for defendants.

SIBLEY, District Judge.

The trustee in bankruptcy seeks by summary proceedings in the bankruptcy case to set aside a sale of property by a state court and to have it delivered up by the purchaser, and also to compel the state court receiver and attorneys to pay over moneys awarded them by the state court. A motion to dismiss has been made. The proceedings in the state court are not exhibited, but are considered by consent. The main facts appearing are these: On September 5, 1929, a bill was filed against Roy A. Moore and William J. Moore, now bankrupts, and against others, in the Fulton superior court on which receivers were appointed and took charge of the assets of the Moores. November 23, 1929, an involuntary petition in bankruptcy was filed and a receiver appointed therein. This receiver, by direction of the bankruptcy court, applied formally to the state court for possession of the assets on November 26, 1929. After hearing the state court refused to surrender the assets until there should be an adjudication in bankruptcy, insolvency being contested, but directed its receivers not to change the status of the assets. The bankruptcy court took no steps to compel surrender. On January 14, 1930, the jury in the bankruptcy court found the Moores solvent, but no judgment of dismissal was entered thereon. The receiver in bankruptcy was discharged at his request on January 22, 1930. On March 8th, during the same term, a motion for a new trial was filed and granted March 22d. Meanwhile, on March 7th, on the report of an auditor, the state court had ordered its receivers to surrender the most of the assets in their hands to a claimant of them, but reserved jurisdiction to make further administrative orders. On March 28th, on petition of its receivers, the state court ordered the payment to them and their attorneys and attorneys for petitioning creditors and the auditor of $300 cash on hand, on account of their compensation, and also ordered its receivers to sell certain assets, apparently all that remained. The sale was confirmed April 1st, and the same day the proceeds were paid out to the officers of court and attorneys aforesaid. All this was done without notice to any representative of the bankruptcy litigation. The new trial in the bankruptcy court resulted, on April 8th, in an adjudication that the Moores were bankrupt. The receiver was reappointed April 9th, and on April 12th, by direction of his court, again entered the state court and applied for the assets. He moved, on April 12th, in the state court to vacate the orders of distribution of the cash and the sale of the property and disposition of the proceeds above mentioned. The state court held that there were no assets to be presently turned over and that the vacation of the orders would have to await trial in due course. A trustee in bankruptcy having been elected, he moved in the bankruptcy court to require delivery of the money and property as first above stated, on June 24, 1930, making the purchaser at the sale, the state court receiver, and the attorneys receiving the money parties thereto. The main questions for decision are: Can a state court, as against a trustee in bankruptcy, validly sell property in its hands under a general receivership for creditors pending contest for adjudication in bankruptcy after formal notice thereof and without notice to the bankruptcy court and its litigants? Can the state court, in such instance, validly pay the proceeds to its officers? Can the trustee recover the property so sold, or the money so paid out, by summary proceedings in the bankruptcy court?

Touching the possession of identical property, the relation between equity courts of the United States and those of the state is that of courts of concurrent jurisdiction, in which, by the rules of comity, a priority of assumption of jurisdiction carries a priority of right to have the property in order to execute the jurisdiction. Patterson v. Veasey (D. C.) 295 F. 163, and cases cited. As between courts of bankruptcy and courts of the state the same rule obtains where the state court has first undertaken to try the title or assert a lien against specific property, which title or lien will not be affected by bankruptcy. Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; Merry v. Jones, 119 Ga. 643, 46 S. E. 861. If, however, the proceeding in the state court is professedly or in effect one to ascertain all the debts and administer all the property of an insolvent person, which is the essence of bankruptcy, or if, though having a lesser scope, it will be governed by an application of the Bankruptcy Act on the occurrence of bankruptcy, as where transfers and liens otherwise valid are nullified by bankruptcy, its being prior in time cuts no figure. The priority of right in the bank-

ruptcy court, when provided by acts of Congress, must prevail because these acts are made under a delegation to Congress of general power over bankruptcies by article 1, § 8, par. 4, of the Constitution, and this Constitution and the laws made under it are the supreme law in all courts, whether state or federal, both according to the Federal Constitution, art. 6, § 2, and that of the state of Georgia, art. 12, § 1, par. 1. The acts of Congress have vested the full power to ascertain the debts and administer the property of bankrupts, as defined in the act, in courts of bankruptcy, and have authorized these courts to collect the assets through receivers pending adjudication and through trustees afterwards. This authority, so far as given, may be exercised without regard to the rules of comity, for as respects this matter the courts are not of concurrent jurisdiction. While by statute federal courts may not ordinarily interfere by injunction with proceedings in the state courts, the exception is of instances authorized by the bankruptcy laws. 28 USCA § 379. In this case before adjudication the bankruptcy court saw fit to appoint a receiver and demand the assets under authority of section 2, clause 3, of the Bankruptcy Act (11 USCA § 11(3); as construed in Bryan v. Bernheimer, 181 U. S. 188, 21 S. Ct. 557, 45 L. Ed. 814. It was thereupon the duty of the state court to surrender the assets without questioning the propriety of the receiver's appointment or the necessity for his possession, or the likelihood of an adjudication. White v. Davis, 134 Ga. at page 284, 67 S. E. 716. A refusal to surrender could be based only on a finding that the case in the state court was one that should proceed notwithstanding bankruptcy. Merry v. Jones, 119 Ga. 643, 46 S. E. 861; Carling v. Seymour Lumber Co. (C. C. A.) 113 F. 483. The bill before the state court dealt with a specific tract of land, and with a special class of creditors interested in it; but it also sought to require all creditors to intervene and to enjoin them from proceeding elsewhere, and also sought an administration of the entire estate of the Moores, alleging them to be insolvent. Its general character was a creditors' bill. Merry v. Jones, supra; McGahee v. Cruickshank, 133 Ga. 652, 66 S. E. 776. The appointment of a receiver on it was the act of bankruptcy charged. The reason for Congress making such a thing an act of bankruptcy is that a receivership, like the general assignment dealt with in Bryan v. Bernheimer, might result in waste or in prejudice to some creditors, and if attacked within four months each was made an act of bankruptcy and voidable thereby. It would be indeed strange if a situation thus sought to be controlled was not intended to be arrested in its progress pending adjudication. The bankruptcy court here did not enforce its right to possession, nor did it exercise its power of injunction to maintain the status, but relied on the state court to maintain it. It was once contended in Georgia that unless the bankruptcy court went to such extremes that the state court was not bound to notice it. The contrary ruling was made, however, in Seligman v. Ferst, 57 Ga. 561, and repeated in McGahee v. Cruickshank, 133 Ga. 649, 66 S. E. 776. A formal notice and demand by the bankruptcy court placed upon the state court the same duty to observe a changed relation to the assets so long as it may retain them as an injunction would do. A recognition and observance of the duty of the state court to maintain the status pending adjudication in bankruptcy when left in possession of the general assets will not only tend to a proper co-operation in the administration of law, but will often obviate the necessity for the appointment of a receiver in bankruptcy at all. Such are to be appointed only when "absolutely necessary, for the preservation of estates," in the words of section 2(3) of the Bankruptcy Act, and such necessity would seldom exist where the estate is already in receivership if the duty of maintaining the status pending adjudication were clearly recognized. Much expense and much confusion by shifting management would thereby be saved. I hold, not that the state court is deprived of all jurisdiction over property in its custody by the filing of a bankruptcy petition, but that pending adjudication and after notification, it is under legal duty to preserve it and to maintain its status as far as is consistent with its preservation, and a contrary disposition of it, especially when made without notice to the Bankruptcy court, is erroneous and unlawful.

 It is believed that the state court in this case so recognized its duty and acted otherwise only in the belief that the bankruptcy case had terminated adversely to an adjudication. Such, however, clearly was not the fact. A verdict does not end a case. It takes a judgment to do that, and none was ever entered on this verdict. Moreover, during the term the right to ask a new trial remains, and the verdict cannot be regarded as

final until the expiration of the term. The motion for a new trial was timely made here and had actually been granted when the questioned orders were made in the state court. That court and its litigants having been advised of the bankruptcy litigation were chargable with knowledge of all its developments. The bankruptcy petition was pending after the grant of a new trial to every intent that it had been before the first trial.

The discharge of the bankruptcy receiver on January 22d did not alter the legal duty of the state court. If no receiver had been appointed, but an injunction had issued, or a mere formal intervention had been made to apprise of the pendency of the bankruptcy litigation and ask preservation of the assets by the state court pending it, that duty would remain the same. The bankruptcy court and its litigants had not withdrawn their claim made in the state court, through its receiver, or in any wise abandoned it. Another receiver could at any time be appointed, when useful. His removal did not materially alter the situation. It is not his rights, but the rights and duties of the respective courts and their litigants, that are at stake. The receiver is a mere representative.

The case is widely distinguishable from Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 S. Ct. 96, 100, 56 L. Ed. 208, where the Bankruptcy court had definitely refused for years to proceed to adjudication. Indeed, that case strongly asserts the general rule thus: "Pending the proceedings the law holds the property to abide the decision of the court upon the question of adjudication as effectively as if an attachment had been issued. * * * It follows that, if the bankruptcy proceedings were pending, so that the bankruptcy court acquired jurisdiction over the estate, it was error for the state court to proceed to judgment and appropriation of the property on the attachment suit of a single creditor."

The sale of assets pending adjudication was therefore erroneous and unlawful. It may doubtless be set aside in the state court under its power to regulate and correct its own proceedings by timely action there. Such relief was sought by the second receiver in bankruptcy and is still pending. It may also be sought in the court of bankruptcy under its authority to collect the assets as they existed at the time of the filing of the petition for bankruptcy. This is the relief the trustee seeks. It is urged that the receiver's motion in the state court precludes the trustee here. If by the consent of the bankruptcy court the matter had been submitted to and adjudicated by the state court, such would be the case, but in advance of adjudication the trustee may decline to prosecute the receiver's motion, and may enter the bankruptcy court without prejudice by the receiver's action.

The trustee cannot, of course, both recover the property from the purchaser and its proceeds from the officers of court. He may recover the property if the purchaser is not protected in his purchase, or its proceeds if the sale holds good. The trustee alleges that the purchaser is really no purchaser, but represented one of the receivers in buying it in at his own sale. If this is true, there has been no valid sale, perhaps, for this additional reason. If, however, it appears that he bought independently and in good faith, a question arises whether he is protected under the last sentence of section 67 of the Bankruptcy Act (11 USCA § 107). Paragraphs (c) and (f) of that section make liens and levies procured by legal proceedings within four months before the filing of a petition in bankruptcy to be dissolved and made void by an adjudication. It is for this reason that creditors' bills, filed within four months, being equitable levies and attachments of the debtor's property, are invalidated. Blair v. Brailey (C. C. A.) 221 F. 1. The section concludes: "Nothing herein contained shall have the effect to destroy or impair the title obtained by such levy, judgment, attachment, or other lien, of a bona fide purchaser for value who shall have acquired the same without notice or reasonable cause for inquiry." I construe the words "notice or reasonable cause for inquiry" to refer to notice of a pending or impending bankruptcy. Under the rule of caveat emptor, the purchaser at this sale was bound to examine the proceedings by virtue of which the court was selling, and by the intervention in them of the receiver in bankruptcy, he was duly and properly informed of the pending bankruptcy. He is therefore not without notice, but as above held was bound to ascertain whether the bankruptcy case had so terminated as to authorize the state court validly to sell.

It is further urged that the state court could pay its officers notwithstanding the bankruptcy, for their services in preserving the property. This is asserted where cash

is available. Wilson v. Parr, 115 Ga. 629, 42 S. E. 5. The allowance is nevertheless reviewable by the bankruptcy court, and if excessive the receivers can be made to deliver up the excess. See Bankruptcy Act, § 62, and § 64b (1), 11 USCA § 102, and § 104 (b) (1); In re Rogers (D. C.) 116 F. 435; In re Alison Lumber Co. (D. C.) 137 F. 643; Paine v. Archer (C. C. A.) 233 F. 259. This power to pay, however, does not involve the power to sell to get funds to pay. Hanson v. Stephens, 116 Ga. 722, 42 S. E. 1028. The validity of the sale at issue is not helped by the use that was made of the proceeds.

■■■■■ Adverse claimants whose rights arose prior to the filing of the bankruptcy petition are generally entitled to a trial by plenary suit, when the trustee sues. Bankruptcy Act, § 23 (11 USCA § 46). This section was thought not applicable to a receiver who was seeking to recover from a vendee of a general assignee although the vendee bought before the filing of the petition in bankruptcy, for value and in good faith, in Bryan v. Bernheimer, 181 U. S. 188, 21 S. Ct. 557, 45 L. Ed. 814. The decision is hard to reconcile with that in Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 S. Ct. 293, 46 L. Ed. 413, where the assignee himself was held not subject to summary process with reference to money retained for his compensation earned before the filing of the bankruptcy petition. The litigation in the latter case began with a receiver, though it wound up with a trustee. Agreeing with it is the decision on Galbraith v. Vallely, 256 U. S. 46, 41 S. Ct. 415, 65 L. Ed. 823. It would seem that the same procedure ought to apply to receivers and lawyers who are called on to account for money received for services to the estate as is applied to the general assignee and his lawyer. I think, however, that all these cases may be laid to one side in view of May v. Henderson, 268 U. S. 117, 45 S. Ct. 456, 69 L. Ed. 870, which appears to hold that all such persons as receive or retain money from the estate after the filing of the petition, and with notice of it, thereby receive part of the estate of the bankrupt as it existed when the petition was filed, and take it with the risk of a summary account after adjudication is had. The parties to this petition, therefore, all having gotten what rights they claim after the filing of the bankruptcy proceedings, and in the face of it, are subject to summary procedure in respect thereto. The petition will be retained for trial accordingly.