No. 36.—A. M. D. KING, plaintiff in error, *vs.* THE CENTRAL BANK, defendant.

[1.] In this case, the Court declines expressing any opinion on the validity of the Bankrupt Law of the United States, passed in 1842, because, whether pronounced valid or invalid, the decision could not benefit the plaintiff in error.

[2.] It is not a valid defence for an indorser, that the maker has been discharged under the Bankrupt Law.

Motion to have *fi. fa.* entered satisfied, in Monroe Superior Court.   Decided by Judge FLOYD, September Term, 1848.

The Central Bank obtained a judgment against A. M. D. King, as indorser, upon which a *fi. fa.* was issued.

At the September Term, 1848, of the Superior Court of Monroe County, the defendant, King, moved to have the *fi. fa.* against him entered satisfied and returned to office, upon the ground that the same was obtained against him as an indorser, upon a note made prior to the Act of Congress, known as the Bankrupt Law; and that after the judgment was obtained, from which said execution issued, one of the makers of the note had received his certificate of bankruptcy, and was discharged from all liability on said note, after due notice of the application given to plaintiff.

After argument heard, the Court refused the motion.

To which A. M. D. King excepted, and alleges the same as error.

A. M. D. KING and S. T. BAILEY, for plaintiff in error.

POWERS & WHITTLE, for defendant.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] If I understand distinctly, the view taken of this case by the plaintiff in error, it is this : He being indorser upon a promissory note, made prior to the passage of the Bankrupt Law of the United States, and his principal being discharged by a certificate under that law, that discharge also discharges him. He holds that the law of Congress has not only discharged the principal, as to all liability to his creditor, but as to all liability over to him, the indorser, and therefore, by operation of law, he, as indorser, is also discharged of all liability to the creditor. He starts, must needs start, with the assumption, that the Bankrupt Law is valid, so far as it has taken effect upon his principal, for if it be not valid in its operation upon his principal, then his principal's liability over to him continues. He is not injured—his contract of suretyship continues unimpaired, and the reason for his release to the creditor ceases. The Bankrupt Law, whilst it provides for the discharge of the principal, expressly provides that the discharge of the principal shall not operate as a discharge of the indorser. This being so, it becomes indispensable to the conclusion at which the plaintiff in error arrives, and to which he would conduct us, to assert the invalidity of the Bankrupt Law, so far as it retains his liability as indorser, after it has discharged his principal. He therefore takes that ground, and his position is, that inasmuch as the note was made before the passage of the Bankrupt Law, his rights, as indorser, vested under his contract of suretyship, made with reference to the laws governing such contracts, at the time it was entered into—that the effect of the Bankrupt Law, in discharging his principal, and expressly holding him liable, divests those rights; and therefore, the Bankrupt Law, so far as it retains his liability, is a nullity.

Thus are we invited to the decision of questions as grave as any ever presented to an American Bench. If we were willing to meet them now, we would find presented in this case, for determination—

King *vs.* The Central Bank.

1st. Whether a certificate of bankruptcy to the principal debtor discharges his liability over to his indorser, who may afterwards pay the debt; and,

2d. Whether the grant of power in the Federal Constitution to the Congress of the United States, "to establish uniform laws on the subject of bankruptcy," clothes that body with power to pass an Act of Bankruptcy, which, in its operation, acts upon existing contracts, by annulling them, or by divesting any rights which had vested under them.

This Court is not in the habit of shrinking from the responsibility of any question made for its determination; and I might venture to say, without, I trust, exhibiting an air of presumption, that it is as willing to meet these questions, when the rights of parties require them to be met, as it is to encounter any, the most unimportant point of the Common Law; not because they would not feel them to be difficult and solemn, but because the sense of duty, in either case, would be equally strong, and with equal cheerfulness and alacrity responded to. The Bankrupt Law has, however, been repealed. Whether within the constitutional competency of Congress to have passed such a law or not, so far as that law is concerned, is a matter of very little consequence. If we did believe that the law was void, because interfering with vested rights, (and as to that, we wholly disclaim intimating an opinion,) it might be a question, whether, in reference alone to the expediency of the decision, it would do any good so to declare it; in other words, whether, in reference to the best interests of all concerned, it might not be expedient to suffer things to remain as they have been ordered under that Act. But the conclusive reason, that upon which we now act, why we decline to decide these questions, is this: Decide them as we may, the plaintiff in error can take no benefit under the decision. If the law be a valid law, he is not entitled to prevail in his motion to set aside or have the judgment against him entered satisfied; and if it be void, he is equally unentitled to prevail. It only remains for me to show this, which is briefly done as follows:

[2.] If the Bankrupt Law be valid, as between the creditor and the principal debtor, so as to discharge him, not only from his liability to the creditor, but also from his liability over to his indorser, it is also valid so far as it retains the liability of the indorser to the creditor. The same reasons which would sustain it

in the one provision, must sustain it in the other. We are free now to declare, that if the law be constitutional, as to the maker— as between him, I mean to say, and his creditor—it is also constitutional in that provision which enacts that the indorser shall not be discharged by the discharge of the principal. So that, if we should be of opinion that the law is constitutional, that opinion could not benefit the plaintiff in error, for by that opinion, his liability to the creditor, under the law, is declared.

Again, if the law be *unconstitutional*, then the judgment of the Federal Court, which discharged the principal, is a nullity. Every Court in the State having competent jurisdiction, would be compelled so to hold it. If it is, then the very ground upon which he seeks relief is removed—his principal is not discharged— he is still liable over to him—his contract of suretyship is unimpaired—he is divested of no rights which vested in him under the law, as it stood when the contract was made, and we ought not, and could not, set aside the judgment against him. So, also, if the law be unconstitutional, as to the principal debtor, it is also unconstitutional as to the indorser, and the plaintiff in error is deprived of no rights by that part of the Act which retains his liability.

It is therefore very manifest that, determine this question as we may, the plaintiff's liability, as the case now stands before us, continues. For these reasons, we decline expressing any opinion as to the validity of the Act of 1842, known as the Bankrupt Law, and affirm the judgment of the Court below.