### R. C. MAHON CO. *v.* MOLIN.

1. ACCOUNT STATED—DATE PAYABLE.

   If open account was by agreement converted into account stated, it would not necessarily follow that account stated was not to be due and payable until following month.

2. GARNISHMENT—BOND STATUTORY.

   Bond in garnishment is statutory (3 Comp. Laws 1915, § 13165).

   As to when discharge of principal in bankruptcy release surety on a bond given by principal in an action at law, see annotation in 14 L. R. A. (N. S.) 507; 28 L. R. A. (N. S.) 234.

3. Bankruptcy—Discharging Principal and Holding Surety on
    Bond.
    Practice of rendering judgment against principal defendant dis-
        charged as bankrupt and perpetually staying execution against
        him, but holding surety on bond given to release garnishment
        is well recognized.

4. Same—Surety on Garnishment Bond Not Discharged.
    Where garnishment proceedings antedated bankruptcy proceed-
        ings more than four months, discharge of principal in bank-
        ruptcy did not discharge surety on bond given to release
        garnishment.

5. Corporations—Annual    Report—Suspension    of    Corporate
    Powers.
    Mere irregularity by corporation in filing annual report required
        by Comp. Laws Supp. 1922, § 9053 (173), as amended by
        Act No. 72, Pub. Acts 1927, did not work suspension of its
        corporate powers, where report filed was later amended and
        approved, especially in view of power vested in secretary of
        State to extend time for filing report by Act No. 172, Pub.
        Acts 1923.

Error to Wayne; Marschner (Adolph F.), J. Sub-
mitted October 30, 1930. (Docket No. 86, Calendar
No. 35,247.) Decided December 2, 1930. Rehearing
denied January 23, 1931.

Assumpsit by R. C. Mahon Company, a Michigan
corporation, against Jacob Molin, doing business as
the Realty Cornice Company, defendant, and Max
Dunitz, surety on bond to release garnisheed bank
account, for balance due on account. Judgment for
plaintiff. Defendant brings error. Affirmed.

*Griffin, Heal & Emery,* for plaintiff.

*Shapero & Shapero,* for defendants.

North, J. Plaintiff sold to defendant Jacob Molin
goods on an open account. Defendants claim that
some of the articles purchased from plaintiff were

unsatisfactory. There was an unpaid balance due plaintiff on December 14, 1926, amounting to $5,340. On that day plaintiff's representative called upon defendant and obtained from him $1,340 to apply on account, thus leaving a balance of $4,000. Defendant Molin claims that as a result of an agreement between himself and plaintiff's representative this balance at the time of the payment was converted into an account stated which was not to become due and payable until the following month. Without waiting until the following month plaintiff began this suit December 27, 1926. At the hearing before the circuit judge without a jury one of the defenses was that the suit was prematurely brought. Plaintiff denied defendants' claim that the open account was transformed into an account stated which would not mature until the following month. While the circuit judge did not make a specific finding of fact on this issue, he did hold against defendants' contention and render a judgment of $4,000 in favor of plaintiff. Defendants review by writ of error the issue above noted and others to which we will call attention later.

Notwithstanding suit was started in December, 1926, the case was not heard on its merits until March, 1930. The defense above noted was not made until defendant filed a second plea with an amended notice a few days prior to the hearing. We think there is a conflict in the testimony on this question, and that the record is such that we would not be justified in overturning the determination of the trial court. Even if it be conceded that as a result of the conference on December 14, 1926, between plaintiff's representative and defendant Molin, the open account became an account stated, it does not necessarily follow that it was further agreed that

this account stated was not to be due and payable until the following month. We think the testimony would not justify the conclusion that there was a meeting of minds on this point. The circuit judge was right in holding against defendants' contention that this suit was prematurely brought.

The defense is also urged that both Molin and Max Dunitz are released because of the former's discharge in bankruptcy. Incident to bringing this suit plaintiff garnisheed Molin's bank account. Release of garnishment was obtained by a bond dated December 30, 1926, and filed January 17, 1927. The defendant Max Dunitz was a surety on this bond. The petition in the involuntary bankruptcy against Molin was not filed until September 8, 1927. It is conceded that his discharge in bankruptcy foreclosed plaintiff's right to recover from Molin. While judgment was entered in the circuit court against him in this suit, simultaneously there was entered a perpetual stay of execution. Judgment in the circuit was also rendered against Dunitz as surety on the garnishment bond. We think his contention that he is released from liability on the bond by reason of defendant's discharge in bankruptcy cannot be sustained. The bond in garnishment is statutory; and the statute (3 Comp. Laws 1915, § 13165) provides that it shall be conditioned ''to pay any judgment obtained against the defendant or defendants in such action, and abide the order of the court therein.'' The bond given was conditioned in the words of this statute. It is urged by Dunitz that since plaintiff's claim could not be collected from the principal defendant no valid judgment could be rendered against him, and hence there is no judgment rendered in the case for the payment of which the surety is liable. This, we think, is a strained construction of the bond.

It entirely eliminates the provision in both the statute and in the bond that the parties bound thereby will "abide the order of the court" in the suit in which it is given. Further, defendants' contention would entirely defeat the purpose of this bond and result in a miscarriage of justice in the instant case. From the dates above noted, it is apparent that the lien obtained by plaintiff on Molin's bank account antedated the proceeding in bankruptcy more than four months, and it was not affected thereby. The lien was released solely by the giving of the garnishment bond. By an indirect method the defendants would make this bond an instrumentality by which the bankruptcy proceeding would defeat plaintiff's garnishment lien. Such a result is not contemplated by the bankruptcy act (11 USCA § 1 *et seq.*). The exact question under consideration was passed upon in *National Surety Co.* v. *Medlock,* 2 Ga. App. 665 (58 S. E. 1131), wherein the garnishment antedated the bankruptcy proceeding more than four months, and the court held: "The bankruptcy of the defendant does not discharge the surety on the dissolving (garnishment) bond."

In *Re Albrecht,* 17 N. B. R. 287 (1 Fed. Cas. No. 145), a case which arose in this State, Judge Brown, later justice of the United States supreme court, said:

"I deem it inconsistent with the general purpose of the (bankruptcy) act to hold that the lien of a creditor, lawfully acquired by his diligence, shall be lost by the debtor giving a bond to satisfy the judgment, an action entirely beyond the control of the creditor, and one which was designed to secure, not to defeat, the ultimate payment of his debt."

In a case involving a judgment creditor's bill, Chief Justice Fuller, speaking for the United States supreme court, said:

"Where the lien is obtained more than four months prior to the filing of the petition, it is not only not to be deemed null and void on adjudication (of bankruptcy) but its validity is recognized." *Metcalf* v. *Barker,* 187 U. S. 165 (23 Sup. Ct. 67).

This court has expressly held that the defendant's discharge will not release from liability his surety on an appeal bond. *Brown & Brown Coal Co.* v. *Antezak,* 164 Mich. 110 (Ann. Cas. 1912B, 778). The same has been held relative to a surety on an attachment bond, *Goodwin & Sigel* v. *Boston Clothing Co.,* 47 R. I. 25 (129 Atl. 611); *Guaranty Security Corp.* v. *Oppenheimer,* 243 Mass. 324 (137 N. E. 644); and of a surety on a bond to release property from levy of execution, *Pinkard* v. *Willis,* 24 Tex. Civ. App. 69 (57 S. W. 891); as to a surety on a bond given in trover, *Steinhauer & Wight* v. *Adair,* 20 Ga. App. 733 (93 S. E. 280); on an injunction bond, *Stull Bros.* v. *Beddeo,* 78 Neb. 119 (112 N. W. 315, 14 L. R. A. [N. S.] 507, 15 Ann. Cas. 952); and also as to a surety on a poor debtor's bond, *Carpenter* v. *Goddard,* 191 Mass. 54 (76 N. E. 953). Many other cases of similar purport might be cited. There is neither good reason nor statutory provision which requires or would justify releasing the surety in the instant case.

The practice of rendering a judgment against the principal defendant and perpetually staying execution against him but holding the surety on the bond given under such circumstances is well recognized. *Hill* v. *Harding,* 130 U. S. 699 (9 Sup. Ct. 725); *Brown & Brown Coal Co.* v. *Antezak, supra;*

*Sprague, Warner & Co.* v. *Fischer,* 199 Mich. 601; *Schunack* v. *Art Metal Novelty Co.,* 84 Conn. 331 (80 Atl. 290); *Butterick Pub. Co.* v. *Bowen Co.,* 33 R. I. 40 (80 Atl. 277); *Alvaton Mercantile Co.* v. *Caldwell,* 156 Ga. 317 (119 S. E. 25); *Light* v. *Hunt,* 17 Ga. App. 491 (87 S. E. 763). It is the proper and most direct method of enabling plaintiff to obtain the same result that he could have obtained had the garnishment not been released by the giving of a bond. To hold that such practice is not permissible is an injustice and would defeat the right given to plaintiff by statute in the garnishment proceeding. The trial court properly held that Molin's bankruptcy discharge did not. release the surety on the garnishment bond.

The further defense is made that plaintiff, a Michigan corporation, failed to file a proper annual report as required by statute (Comp. Laws Supp. 1922, § 9053 [173], as amended by Act No. 72, Pub. Acts 1927), for the year 1926, prior to November 9th of that year, and that because of such failure its corporate powers were suspended and it cannot recover for goods sold to Molin between September 11th, 1926, and November 9th following; and since the $1,340 paid December 14, 1926, would more than cover the balance of the account, plaintiff cannot recover. The record discloses that plaintiff did pay the fee due to the State and filed an annual report September 7, 1926. This report was found by the secretary of State to be unsatisfactory; but plaintiff was permitted to submit a revised report which was indorsed by the secretary of State "Approved and accepted Nov. 9, '26." "Filed Sept. 7, 1926." Plaintiff made a good faith effort to comply with the statutory requirement in filing its annual report. The fee paid was sufficient and its first report was retained by the secretary of State until the revised

report was filed in lieu thereof. The first report was not acceptable in form to the secretary of State because plaintiff attempted to embody therein the annual report of a subsidiary company. Such a mere irregularity did not work a suspension of plaintiff's corporate powers, especially in view of the power vested in the secretary of State by Act No. 172, Pub. Acts 1923, authorizing him to extend the time for filing the report. In the instant case there evidently was not a full compliance with the statutory requisites for granting an extension of time; but even if it be assumed there was a default, we think the action taken by the secretary of State should be construed as the granting of an extension as provided by the statute. The defense urged is technical and should not be unnecessarily extended to enable one to escape liability.

The judgment in the lower court is affirmed, with costs to the appellee.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, SHARPE, and FEAD, JJ., concurred.